IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

OCTAVIOUS E. ELMORE,       )
                           )
       Plaintiff,         )
                           )
     v.                    )         1:13-CV-515
                           )
MR. SORRELL SAUNDERS, et al., )
                           )
       Defendants.        )

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

According to his complaint, Octavious Elmore was placed in a cell with no running water at Scotland Correctional Institution for four days, during which he was handcuffed and denied bedding, a shower, and any water or hygienic items to clean himself. He contends these conditions violated his Eighth Amendment rights and impeded his free exercise of religion. Because Mr. Elmore has stated a claim for violation of his clearly established Eighth Amendment rights, his claims for monetary, declaratory, and injunctive relief on this ground may proceed. Because no allegations suggest that the defendants intentionally or consciously interfered with Mr. Elmore's religious practices, his First Amendment claim will be dismissed.

### **Facts**

The following facts are taken from Mr. Elmore's complaint. (Doc. 2.) Those allegations must be accepted as true for purposes of ruling on a motion to dismiss. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Mr. Elmore is incarcerated by the State of North Carolina at Scotland Correctional Institution. (Doc. 2 at ¶ 2.) On May 17, 2012, officers at the prison restrained Mr. Elmore and searched his cell. (Doc. 2 at ¶¶ 9-11.) Defendant Karen Henderson led the search, in which defendant-Captain Torrez also participated. (*Id.* at ¶¶ 12-13.) During the search, officers located Mr. Elmore's Muslim prayer rug and beads. (*Id.* at ¶ 13.) Lieutenant Henderson asked Mr. Elmore about the items and used a hand wand to scan Mr. Elmore. (*Id.*) Though the scan did not alert to any contraband, Lieutenant Henderson escorted Mr. Elmore to the receiving area and ordered him to walk through a metal detector. (*Id.* at ¶¶ 13-14.) The alarm went off, and Lieutenant Henderson directed another officer to have Mr. Elmore strip searched. (*Id.* at ¶ 14.)

The strip search did not reveal any contraband, and Lieutenant Henderson directed Mr. Elmore to go through the metal detector again. (*Id.* at ¶ 15.) The detector again alerted, and Lieutenant Henderson believed that Mr. Elmore had a cell phone in his rectal cavity. (*Id.*) Lieutenant Henderson handcuffed Mr. Elmore and placed him in a close observation cell. (*Id.* at ¶ 16.) A maintenance employee disconnected the water running to the shower, sink, and toilet. (*Id.*) Captain Torrez told Mr. Elmore "we're going to get that! . . . That's why your people told on you." (*Id.* at ¶ 17.)

That day, Lieutenant Henderson repeatedly asked Mr. Elmore to give up the cell phone, telling him that defendant-Captain Covington told her that Mr. Elmore would be allowed to leave close observation if he gave it up. (*Id.* at ¶ 19.) Mr. Elmore asked Lieutenant Henderson if she could have a shower. (*Id.*) She said he could shower first thing in the morning and that he would get a mattress that night. (*Id.*)

Mr. Elmore remained handcuffed overnight, had to urinate while being watched, and was not given water to clean himself. (*Id.* at ¶ 21.) Mr. Elmore wanted to pray but could not do so without water and while handcuffed. (*Id.*) The cell was cold, and Mr. Elmore was wearing only a t-shirt, underwear, and gym shorts. (*Id.*) Mr. Elmore slept on a bare mattress. (*Id.*)

The following day, Lieutenant Henderson brought Mr. Elmore breakfast and socks. (*Id.* at ¶ 22.) Later, Lieutenant Henderson brought Mr. Elmore lunch, juice, and, upon request, a cup of drinking water. (*Id.* at ¶ 24.) She told Mr. Elmore that the prison had received a phone call reporting that he possessed a cell phone and that he could not leave the cell until he gave up the cell phone. (*Id.* at ¶ 25.) Later, she told Mr. Elmore that if he did not turn the cell phone in, he would be transported to Central Prison where it would be forcibly removed. (*Id.* at ¶ 26.) Mr. Elmore asked about a shower, and she told him she would tell the night shift to give him one. (*Id.*)

Mr. Elmore remained handcuffed in close observation over the weekend. (*Id.* at ¶¶ 27, 30.) He was not given a blanket, (*id.* at ¶ 31), nor was he given water to clean himself after using the bathroom or before eating. (*Id.* at ¶¶ 29, 32.) On May 20, Captain Covington took Mr. Elmore's mattress. (*Id.* at ¶ 33.) Mr. Elmore reported that officers had forgotten to feed him, and Captain Covington brought him breakfast. (*Id.*) Mr. Elmore again requested a shower, and Captain Covington told him he would get one later. (*Id.*) A few hours later, Mr. Elmore was again sent through the metal detector and, after the alarm alerted, strip searched with no contraband located. (*Id.* at ¶ 34.) Mr.

Elmore was then sent to segregation and given a shower. (*Id.* at ¶ 35.) On May 21, he was x-rayed and found to possess no contraband. (*Id.* at ¶ 36.)

Thereafter, Mr. Elmore was charged with accessing a Facebook page while in prison. (*Id.* at ¶ 37.) Mr. Elmore pled guilty to the offense. (*Id.*) Mr. Elmore submitted a grievance complaining about his treatment in close observation, which was dismissed. (*Id.* at ¶¶ 40-43.) He then filed this complaint pursuant to 42 U.S.C. § 1983.

**Analysis**

The Court reads the complaint to assert claims against Captain Torrez, Captain Covington, and Lieutenant Henderson for deliberate indifference under the Eighth Amendment for the conditions of his confinement and for violation of his religious freedom under the First Amendment for his inability to pray while handcuffed and without washing. The Court further reads the complaint to assert claims for supervisory liability against defendant-administrators Sorrell Saunders and Kristie Stanback for what Mr. Elmore characterizes as the "dry-celling" policy.[1]

**I.     Deliberate Indifference**

---

[1] The defendants very reasonably read Mr. Elmore's complaint to assert violations of his right to privacy, unreasonable search and seizure, and excessive force, (*see* Doc. 15 at 9, 12), but Mr. Elmore denies that he made these claims. (*See* Doc. 17 at 8.) On the other hand, somewhat contradictorily, he contends that his claim for denial of freedom from restraints is based on the Fourth Amendment. (*Id.* at 6.) Generally, however, whether an inmate was excessively restrained is analyzed as an excessive force claim under the Eighth Amendment, not the Fourth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 320-22 (1986); *Williams v. Benjamin*, 77 F.3d 756, 764-65 (4th Cir. 1996); *see also* 1 Rights of Prisoners § 3:23 (4th ed. 2013). There are also statements in the complaint that suggest Mr. Elmore is making a due process claim in the tradition of *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). If Mr. Elmore wishes to assert claims beyond those stated in the text, or if the Court has misattributed which claims are made against which defendants, Mr. Elmore will need to promptly seek leave to amend his complaint to state those claims more clearly.

To state a deliberate indifference claim under the Eighth Amendment, Mr. Elmore must allege two elements: first, "that objectively the deprivation of a basic human need was 'sufficiently serious,'" and second, "that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *accord Goodman v. Wexford Health Sources, Inc.*, 425 F. App'x 202, 204 (4th Cir. 2011).

Mr. Elmore does not object to his placement in the close observation cell, but rather to the conditions of his confinement in the cell. (Doc. 17 at 3.) He alleges that throughout his four days in the close observation cell, he was handcuffed and denied access to water to clean himself, other hygiene items, and bedding, despite cold temperatures. He further alleges with specificity that his treatment was deliberate and violated prison policy for close observation. (Doc. 2 at ¶ 38.) Mr. Elmore generally alleges that he suffered physical, mental, and emotional injuries as a result of his treatment.

Construing this *pro se* complaint broadly, the Court finds Mr. Elmore states a claim for deliberate indifference. The Eighth Amendment requires prison officials to provide inmates with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)." *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980); *see also Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (holding that hygiene items are among life's necessities and that "[a] lack of heat, clothing, or sanitation can violate the Eighth Amendment"); *McCray v. Burrell*, 516 F.2d 357, 369 (4th Cir. 1975) (holding that a lack of running water and personal hygiene

5

articles violated the Eighth Amendment); *Martino v. Carey*, 563 F. Supp. 984, 999 (D. Or. 1983) (holding that "[t]he provision of adequate means of hygiene" is constitutionally required); *cf. Webb v. Deboo*, 423 F. App'x 299, 301 (4th Cir. 2011) (holding that the inmate's allegations of "overcrowding and lack of sanitation" adequately stated the objective component of an Eighth Amendment claim and that the district court erred in dismissing the claim for failure to allege a personal injury).

A dry cell itself does not necessarily or automatically violate an inmate's Eighth Amendment rights. *E.g.*, *Chappell v. Mandeville*, 706 F.3d 1052, 1061-62 (9th Cir. 2013) (holding that dry cell conditions did not violate clearly established law and collecting cases on dry celling); *Faircloth v. Lee*, No. 5:04-CT-608-FL, 2006 WL 4792788, at *8-9 (E.D.N.C. Nov. 20, 2006), *aff'd*, 227 F. App'x 317 (4th Cir. 2007); *Mendoza v. Blodgett*, No. C-89-770-JMH, 1990 WL 263527, at *3-5 (E.D. Wash. Dec. 21, 1990) (holding that a dry cell policy, which allowed washing and hygiene items at specific times, did not violate the Eighth Amendment). But even when inmates are properly confined in dry cells, as may well have been appropriate here, the specific conditions in the dry cell can violate the Eighth Amendment's guarantees. *See Young v. Quinlan*, 960 F.2d 351, 364-65 (3d Cir. 1992) (holding that conditions during a four-day dry cell confinement, including not allowing the defendant to bathe, shower, or wash his hands before eating would, if proved, violate the Eighth Amendment), *superseded by statute on other grounds*, Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (codified at 42 U.S.C. § 1997e(a)), *as recognized in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000); *Hancock v. Avery*, 301 F. Supp. 786, 791-92 (M.D. Tenn. 1969)

(holding that dry cell conditions violated the Eighth Amendment in part because the plaintiff was "provided with no means by which he [could] maintain his personal cleanliness, with the result that he [was] forced to live and eat under animal-like conditions"). *But cf. Gilblom v. Gillipsie*, 435 F. App'x 165, 168-69 (3d Cir. 2011) (distinguishing the conditions in *Young* and holding that an inmate's 36 hours in a dry cell did not violate the Eighth Amendment).

While not as severe as the conditions at issue in *Young*, Mr. Elmore's allegations that, during his four days in the dry cell, he was never given water to wash his hands after elimination or before eating, despite his requests, combined with the denial of any shower and bedding, despite cold temperatures, adequately support his deliberate indifference claim at this preliminary stage.[2] The defendants' motion to dismiss this claim will be denied. *See De'lonta v. Johnson*, 708 F.3d 520, 524 (4th Cir. 2013) ("[Courts] afford liberal construction to the allegations in pro se complaints raising civil rights issues.").

## II. Violation of Religious Freedom

To state a free exercise of religion claim under the First Amendment, Mr. Elmore must allege that the defendants placed a substantial burden on his ability to practice his

---

[2] Some of the defendants' arguments are inappropriate at this stage as they would require the Court to go beyond the allegations of the complaint or to draw inferences against the plaintiff. Certainly it is possible that the defendants will have a justification for their acts, that the evidence will not support Mr. Elmore's allegations, that there are additional facts which undermine Mr. Elmore's claims, or that the defendants have other defenses they have not adequately raised in connection with the motion to dismiss. These are questions for the future. For example, the defendants make only a perfunctory argument related to the lack of harm Mr. Elmore suffered from the defendants' alleged conduct, ignore the allegations about lack of hygiene options, and do not address contrary case law, summarized, *inter alia*, in *Webb*, 423 F. App'x at 300-01. Nor have the defendants challenged the adequacy of the allegations on a defendant-by-defendant basis.

7

religion. *See Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014). "[O]nly intentional conduct is actionable under the Free Exercise Clause." *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006). "[N]egligent acts by [prison] officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Id.*; *see also Shaheed v. Winston*, 885 F. Supp. 861, 868 (E.D. Va. 1995) (holding that because jail officials' "failure to accommodate Ramadan in 1993 resulted from a misunderstanding . . . , the defendants' actions were negligent, not intentional" and the plaintiffs' free exercise claim failed).[3]

Mr. Elmore alleges that he could not pray during his four days in the close observation cell because he was handcuffed and denied water to cleanse himself. Mr. Elmore also alleges that the defendants knew he was Muslim based on items in his cell and a conversation about those items. While Mr. Elmore alleges he could not pray while shackled and without cleansing, he does not allege that he told any defendant that he needed to wash and be unshackled in order to pray. Nor is there any allegation which the Court can infer that the defendants knew or should have known that these limits impeded his ability to pray or that the defendants acted consciously or intentionally.

Without allegations of "conscious or intentional interference with his free exercise rights," *Lovelace*, 472 F.3d at 201, Mr. Elmore fails to state a § 1983 free exercise claim. The Court will therefore dismiss this claim.

---

[3] Mr. Elmore does not attempt to state a claim under RLUIPA. (*See generally* Doc. 2.) Based on his pending RLUIPA claims in the Eastern District, the Court assumes this was a deliberate choice. *See* Complaint at 7, 12, Elmore v. Herring, No. 5:13-ct-03107-FL (E.D.N.C. May 6, 2013), ECF No. 1.

### III. Supervisory Liability

A supervisor who did not engage in affirmative misconduct nevertheless may be liable if (1) "the supervisor had actual or constructive knowledge that his [or her] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 206 (4th Cir. 2002) (quotation marks omitted). Under the second prong, "a plaintiff ordinarily cannot satisfy his burden of proof by pointing to a single incident or isolated incidents." *Id.* (quotation marks and alterations omitted).

Construing the complaint liberally, *see De'lonta*, 708 F.3d at 524, the Court concludes that Mr. Elmore states a claim for supervisory liability. (Doc. 2 at ¶¶ 38-40, 45). The defendants' motion to dismiss this claim will be denied.

### IV. Qualified Immunity

"[R]esolution of a qualified immunity defense is a two-pronged inquiry . . . ." *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009). First, the Court must determine "whether a constitutional right would have been violated on the facts alleged." *Id.* If so, the Court then considers "whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his [or her] conduct violated that right." *Id.* at 330-31. "'Unless the plaintiff's allegations state a claim of

9

violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Id.* at 330 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

As the above analysis indicates, Mr. Elmore adequately alleges that his Eighth Amendment rights have been violated. These rights are clearly established. In 1991, the Supreme Court noted that "a low cell temperature at night combined with a failure to issue blankets" could create an Eighth Amendment violation. *Wilson*, 501 U.S. at 304. Based on *Wilson* and other cases cited above in Part I and absent other facts, a reasonable officer should have known that Mr. Elmore was entitled to more than a bare mattress in a cold cell, nothing else appearing.

Further, the cases cited above in Part I demonstrate that the rights to basic hygiene and sanitation are clearly established. There is nothing new or unclear about the need to be able to wash one's hands after elimination and before eating and the obligation of prison officials to ensure this need is met. No objectively reasonable officer could conclude that Mr. Elmore's hygiene, water, and sanitation needs were being met if he was denied water and hygienic products to clean himself for four days, nothing else appearing. Although *Young* included aggravating circumstances not present here, Mr. Elmore nonetheless alleges some of the dry cell conditions that the Third Circuit described as violating "the basic concepts of humanity and decency that are at the core of the protections afforded by the Eighth Amendment." *Young*, 960 F.2d at 365.

Qualified immunity protects officials from "bad guesses in gray areas," *Wall*, 741 F.3d at 503 (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)), not

violations of core protections established decades ago. On the facts alleged, this is not a gray area. Therefore, the defendants' motion to dismiss Mr. Elmore's claim for monetary damages on the basis of qualified immunity will be denied, without prejudice to renewal at summary judgment where the record will likely be more developed.

It is therefore **ORDERED** that the defendants' motion to dismiss, (Doc. 14), is **GRANTED** in part and **DENIED** in part. Specifically, it is **ORDERED** that:

1. The defendants' motion to dismiss is **GRANTED** as to Mr. Elmore's free exercise claim, and that claim is dismissed without prejudice;

2. The motion to dismiss is **DENIED** without prejudice to renewal at summary judgment as to Mr. Elmore's claims for deliberate indifference under the Eighth Amendment and for supervisory liability related to that claim; and

3. The defendants' motion to dismiss Mr. Elmore's claims for monetary damages on the basis of qualified immunity is **DENIED** without prejudice to renewal at summary judgment.

This the 11th day of September, 2014.

_____
UNITED STATES DISTRICT JUDGE